**TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, a Connecticut Corporation, Plaintiff,**

v.

**TELSTAR CONSTRUCTION COMPANY, INC., a New Mexico Corporation; Skycorp Electrical, Inc., an Arizona Corporation; Terryl D. Corlis and Pauline L. Corlis, husband and wife; And Tom Wayne Walstrom And Suzanne Walstrom, husband and wife, Defendants.**

No. CIV. 02–111 I–PHX–ROS.

United States District Court,
D. Arizona.

March 5, 2003.

Jay Max Mann, Gretchen B. Friedlander, Mann Berens & Wisner LLP, Phoenix, AZ, Jon Scott Musial, Law Office of Jon S. Musial, for Travelers Casualty and Surety Co. of America.

Jon Scott Musial, Law Office of Jon Musial, Scottsdale, AZ, Jennie Deden Behles Law Firm PC, Albuquerque, NM, Sidney J. Diamond, Sidney J. Diamond LLP, El Paso, TX, for Telstar Const., Skycorp Elec., Inc., Terryl D. Corlis, Pauline L. Corlis.

Sharon Brook Shively, Alan H. Susman, Sacks Tierney PA, Scottsdale, AZ, for Skycorp Elec., Inc, Tom Wayne Walstrom, Suzanne Walstrom.

Myles Patrick Hassett, Myles Patrick Hassett PC, Phoenix, AZ, for Summit Global Partners of New Mexico, Inc.

## ORDER

SILVER, District Judge.

This action arose from Plaintiff Travelers' attempt to collect from Defendant Telstar and Defendants the Corlises,[1] officers of Telstar, pursuant *to* an indemnification agreement For losses resulting from the execution and delivery of surety bonds. Plaintiff filed a Complaint against the Defendants alleging breach of contract. Defendants filed a Motion to Dismiss for (1)

---

1. Plaintiff also sued Skycorp Electrical, Inc. and the Walstroms, officers of Skycorp. However, on December 19,2002 a Notice of Settlement was filed stating that the litigation against these Defendants will be terminated by February 17,2003. (Doc. # 45).

lack of personal jurisdiction; (2) lack of venue; and *(3)* improper process and service of process. Plaintiffs Response included various affidavits and exhibits not relied on in the Complaint. Defendants' Reply contained a Motion to Strike these documents Plaintiff, reacting to the Motion to Strike, filed a Request for Leave to File Supplemental Exhibits. For the reasons stated below, the Court will (1) grant Defendants' Motion to Dismiss; (2) partially grant and partially deny Defendants' Motion to Strike; and (3) grant Plaintiffs Request for Leave to File Supplemental Exhibits.

## BACKGROUND

### A. Complaint

On June 14, 2002 Plaintiff filed a Complaint (Doc. # 1) alleging that Defendants Telstar Construction Company, Inc. ("Telstar") and Defendants Terryl D. Corlis and Pauline L. Corlis breached a contractual agreement to indemnify Plaintiff for losses sustained from transactions involving various surety bonds.

Plaintiff is a Connecticut corporation, authorized to do business in the states of Arizona and New Mexico. Defendant Telstar is a New Mexico corporation which does business in New Mexico and Arizona. Defendants Terryl D. Corlis and Pauline L. Corlis are (1) owners in various construction companies, including Defendant Telstar, and (2) New Mexico residents who own a residence in Maricopa County, Arizona.

The Defendants executed an agreement in New Mexico under New Mexico law on May 14, 2001 with Plaintiff wherein Plaintiff agreed to execute and deliver surety bonds for Telstar and Skycorp Electrical, Inc. ("Skycorp"). As a consequence, Defendants promised to completely indemnify Plaintiff for any losses resulting from the agreement. In reliance on this agreement, Plaintiff issued surety bonds to Telstar and Skycorp. Under the bonds, Plaintiff incurred expenses exceeding $12 million.

After filing the Complaint, Plaintiff served (1) Defendant Telstar through its statutory agent in Arizona and (2) the Corlises at their homes in both New Mexico and Arizona.

### B. Plaintiff and Defendant **Motions**

#### 1. Defendants' **Motion** to Dismiss

On August 13, 2002, Defendants filed a Motion to Dismiss Pursuant to Rule 12(b) on Behalf of Defendants Telstar Construction Company, Inc., Terryl D. Corlis and Pauline Corlis ("M.Dis.") (Doc. # 10) that alleges three grounds: (1) lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2); (2) improper venue under Fed.R.Civ.P. 12(b)(3); and (3) insufficient process and service of process under Fed.R.Civ.P. 12(b)(4) and 12(b)(5). In conjunction with the M. Dis., Defendants filed a Separate Statement of Facts ("SOF"). (Doc. # 11).

On September 16, 2002, Plaintiff filed a Response to Motion to Dismiss ("Response to M. Dis."), (Doc. # 27), alleging that personal jurisdiction exists for all of the Defendants, and that both venue in this Court and service of process are proper. With the Response to M. Dis., Plaintiff submitted a number of affidavits and exhibits.

#### 2. Defendants' **Motion** to Strike

On October 4, 2002, Defendants filed a reply styled, "Reply in Support of Motion to Dismiss, Including Evidentiary Objections to Affidavits and Documents Submitted by Plaintiff and Motion to Strike Same" ("M.Strike"). (Doc. # 32). In the M. Strike, Defendants object on various grounds, including hearsay, lack of foundation, speculation, lack of authentication and lack of personal knowledge. Defendants allege that their M. Dis. must be treated

as a Motion for Summary Judgment under Fed.R.Civ.P. 56 because matters outside the pleadings were submitted with the motion.

On October 23,2002, Plaintiff filed a response styled "Response to Motion to Strike Affidavits and Documents Submitted by Plaintiff with its Response to Motion to Dismiss" ("Response to M. Strike") (Doc. # 36). Plaintiff claims that Defendants' M. Dis. is not subject to Fed. R.Civ.P. 56, and even if it were, the materials submitted by Plaintiff should be considered by the Court.

### 3. Plaintiffs Motion for Leave to Supplement

On October 8, 2002, Plaintiff filed a pleading styled "Request for Leave to File Supplemental Exhibits in Support of Response to Motion to Dismiss and Supplemental Response to Motion to Dismiss" ("Request for Leave to File") (Doc. # 33). On October 28, 2002, Defendants filed a Response to Plaintiff's Request for Leave to File. (Doc. # 35). Four days later Plaintiff filed a Reply to its Request for Leave to File (Doc. # 38). Three days later, Defendants filed a pleading styled "Reply in Support of Evidentiary Objections to Affidavits and Documents Submitted by Plaintiff and Motion to Strike Same" that addresses both issues raised in their M. Strike and Plaintiffs Request for Leave to File. (Doc. # 39).

## ANALYSIS

Pending before the **Court** are **(1)** Defendants' Motion to Dismiss; (2) Defendants' Motion to Strike; and (3) Plaintiffs Motion for Leave to Supplement. Before turning to these Motions, the Court must determine if subject matter jurisdiction exists.

### A. Subject Matter Jurisdiction

In their Reply to the M. Dis., Defendants raised for the first time the issue of subject matter jurisdiction. (Reply M.

Dis. at 8) (Doc. # 32). On December 2,2002, the Court ordered supplemental briefing on this issue. (Doc. # 40). After careful review of the supplemental briefing, the Court issued a December 24,2002 Order finding diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### B. Motion for Leave to Supplement

On October 8,2002, Plaintiff filed its Motion for Leave to Supplement without seeking agreement from Defendants. Plaintiff requests supplementation in two ways. First, Plaintiff desires to include additional affidavits and exhibits that concern contacts by Defendants with Arizona. Second, Plaintiff desires to include evidence of the Corlises being served while at their residence in Arizona.

In a Response, Defendants remark that Plaintiff neglected to request a stipulation from them before filing its Motion. "Had such a request been made, Defendants would have stipulated to such." (Response M. Supp. at 2) (Doc. # 35). Defendants then incorporate by reference their prior objections to Plaintiffs affidavits and exhibits. Id-

Because Defendants have consented to the granting of Plaintiff s Motion for Leave to Supplement, it will be granted and the Court will consider Plaintiffs supplemental material, as well as Defendants' objections to the admissibility of that material.

### C. Motion to Strike

#### 1. Defendants' Arguments

In their Reply in Support of Motion to Dismiss, Defendants include a Motion to Strike various documents submitted by Plaintiff ("M.Strike"). Defendants contend, without citing to any legal authority, that their Motion to Dismiss should be considered by the Court as a Motion for

Summary Judgment. (Defs.' M. Strike at 4 n. 2). Defendants claim their Rule 12 M. Dis. should be converted to a Rule 56 Motion for Summary Judgment merely because they submitted an affidavit with their separate SOF. Defendants further contend that the evidence offered by the Plaintiff must be admissible.

2. Legal Standard and Analysis

**a. The Submission by Plaintiff of Various Documents in Response to the M. Dis. does not Convert it into a Summary Judgment Motion.**

Federal Rule of Civil Procedure 12(b) states:

> *If, on a motion asserting the defense numbered* (6) *to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court,* the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 [of the Federal Rules of Civil Procedure], and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed.R.Civ.P. 12(b) (emphasis added). Defendants' M. Dis., however, is not based upon Fed.R.Civ.P. 12(b)(6) because Defendants only sets forth three arguments: (1) lack of personal jurisdiction under Fed. R.Civ.P. 12(b)(2); (2) improper venue under Fed.R.Civ.P. 12(b)(3); and (3) insufficient process and service of process under Fed.R.Civ.P. 12(b)(4) and 12(b)(5). Therefore, Defendants' M. Dis. is not subject to transformation to a Motion for Summary Judgment.

Because Defendants' M. Dis. is based on Rules 12(b)(2)-(5) of the Federal Rules of Civil Procedure, the Court may consider written materials in connection with the Motion without transforming it

into a Motion for Summary Judgment. It is well established that the Court may consider affidavits and other materials when weighing a Motion to Dismiss for lack of personal jurisdiction under Rule 12(b)(2) without transforming the motion into a Motion for Summary Judgment. *Doe v. Unocal Corp.,* 248 F.3d 915, 922 (9th Cir.2001); *Amba Mktg. Systems, Inc. v. Jobar Int'l. Inc.,* 551 F.2d 784, 787 (9th Cir.1977); *Bach v. McDonnell Douglas, Inc.,* 468 F.Supp. 521, 524 (D.Ariz.1979). In Rule 12(b)(2) motions, "[t]he court may consider evidence presented in affidavits to assist in its determination and may order discovery on the jurisdictional issues." *Doe,* 248 F.3d at 922 (citing to *Data Disc. Inc. v. Systems Tech. Assocs. Inc.,* 557 F.2d 1280, 1285 (9th Cir.1977)). In fact, a plaintiff, in defending itself against a motion to dismiss for lack of personal jurisdiction is "obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba,* 551 F.2d at 787 (citing to *Taylor v. Portland Paramount Corp.,* 383 F.2d 634, 639 (9th Cir. 1967)).

Further, when resolving a motion to dismiss under Rule 12(b)(3), the Court may also consider supplemental written materials. *Argueta v. Banco Mexicano, S.A.,* 87 F.3d 320, 324 (9th Cir.1996); *Kukje Hwajae Ins. Co., Ltd. v. M/V Hyundai Liberty,* 294 F.3d 1171, 1174 (9th Cir. 2002). "Analysis under Rule 12(b)(3) ... permits the district court to consider facts outside of the pleadings." *Argueta,* 87 F.3d at 324.

Moreover, parties may submit affidavits and exhibits with a motion to dismiss under Rule 12(b)(5) as well. *Grantham v. Challenge–Cook Bros., Inc.,* 420 F.2d 1182, 1186 (7th Cir.1969); *Vance Prods., Inc. v. Oasis Med., Inc.,* No. IP 01–0585–C–B/S, 2002 WL 449798, at *1 (S.D.Ind. Mar.20,-2002); *Torrespico v. Columbia Coll.,* No.

97 C 8881, 1998 WL 703450, at *2 n. 3 (N.D.Ill. Sept.30, 1998); *Ellis v. Welch,* No. 92 C 4633, 1994 WL 87387, at *2 (N.D.Ill. Mar. 14, 1994); *SGS–Thomson Microelectronics, Inc. v. United Microelectronics Corp.,* No. C–92–1098–DLJ, 1993 WL 299230, at *2 (N.D.Cal. July 21, 1993); *Welles Products Corp. v. Plad Equipment Co., Ltd.,* 563 F.Supp. 446, 448 (N.D.Ill. 1983). "The court may receive affidavits introduced by the parties when considering a Rule 12(b)(5) motion." *Vance,* 2002 WL 449798, at *1 (citing to *Trotter v. Oppenheimer & Co., Inc.,* No. 96 C 1238, 1997 WL 102531, at *2 (N.D.Ill. Mar.4, 1997)). "Factual questions concerning a 12(b)(5) motion, regarding the manner in which service was executed, may be determined by the Court through affidavits, depositions, or oral testimony." *SGS–Thomson,* 1993 WL 299230, at *2.

Finally, both Rule 12(b)(4) and 12(b)(5) motions set forth similar jurisdictional arguments, and there is no authority or reason to differentiate between Rule 12(b)(5) and Rule 12(b)(4) regarding the documents that the Court may consider without converting the motion to one for summary judgment.

Therefore, the Court may and will consider affidavits and exhibits submitted by both parties for resolving Defendants' M. Dis., and not convert this Motion into one for Summary judgment.

**b. The Supporting Documents Concerning the M. Dis. Must Conform to the Rules of Evidence**

■ It is equally as clear, however, that Plaintiffs affidavits and exhibits submitted in support of the Response to the M. Dis. must comply with the Rules of Evidence. *Hancock v. Hitt,* No. C–98–960–MMC– (ARB), 1998 WL 345392, at *2 (N.D.Cal. June 9, 1998) ("plaintiff must produce *admissible evidence* to support the court's exercise of personal jurisdiction") (empha-

sis added); *Fujitsu–ICL Sys. Inc. v. Effmark Serv. Co.,* No. 00–CV–0777–W– (LSP), 2000 WL 1409760, at *3 (S.D.Cal. June 29, 2000) ("a prima facie showing means that plaintiff has produced *admissible evidence,* which, if believed, would be sufficient to establish the existence of personal jurisdiction") (emphasis added).

Therefore, the Court will consider each of Defendants' objections to Plaintiffs evidence to determine if the evidence complies with the Rules of Evidence.

**1) Affidavit of Eric R. Mausolf**

Defendants object to four different portions of the Mausolf Affidavit.

**a) Spreadsheet Data in Exhibit 1**

It is argued that Exhibit 1 attached to the affidavit must be struck because it constitutes hearsay and lacks foundation. (Reply M. Dis. at 2) (Doc. # 32).

In Paragraph 2, Mausolf states: "Travelers issued payment and performance bonds to Telstar Construction, Inc. on various public works projects located in both Arizona and New Mexico. The name of the projects, the value of the contracts, and the location where the projects is reflected (sic) on the spreadsheet attached hereto as Exhibit '1'." (Response M. Dis. at 2) (Doc. # 27). Exhibit 1 summarizes 24 claims in a table.

Plaintiff responds to Defendants' objection by arguing that in Paragraph 1, Mausolf states that "I make this affidavit of my own personal knowledge." (Doc. # 39). According to Plaintiff, this allegation should be construed liberally and it suffices to overcome Defendant's hearsay and lack of foundation objections. Opinions cited by Plaintiff include *Bader v. Fleschner,* 463 F.Supp. 976, 982 (S.D.N.Y.1978) (suggesting that district court should accept all ambiguities, and draw all reasonable inferences, in favor of nonmoving par-

**924**

ty when addressing defects in affidavits or papers), and *State of La., ex. rel. Guste v. U.S.*, 656 F.Supp. 1310, 1314 (W.D.La. 1986), affirmed 832 F.2d 935, rehearing denied 836 F.2d 1346 (1987) (allowing admission of various exhibits for summary judgment motion despite failure of "literal compliance" with foundation requirements because such compliance "serves no purpose" when the documents were produced via discovery from the objecting party).

■ The Court disagrees and finds that the data contained in Exhibit 1 is hearsay and may not be considered by the Court. Plaintiff relies on cases other than those in the Ninth Circuit.[2] In the Ninth Circuit, regardless of the source of evidence, proper foundation must be laid. *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1028 (9th Cir.2001) ("A plaintiffs belief... without evidence supporting that belief, is no more than speculation or unfounded accusation .... [Plaintiff] failed to show *personal knowledge*. It is not enough for a witness to tell all she knows; she must know all she tells.") (emphasis added); Fed.R.Evid. 602 (prohibiting a witness from testifying on a matter "unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter").

Plaintiff provides no facts establishing Mausolf possessed the legal requisite of personal knowledge of the information contained in Exhibit 1. Instead, Plaintiff argues the Court should assume personal knowledge based on a conclusory statement by Mausolf. Such conclusory affidavits fail to establish foundation. *Far Out Productions, Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir.2001) (rejecting conclusory affidavits because they failed to either set forth specific facts or identify with reasonable particularity evidence that would preclude summary judgment); *Fujitsu–ICL*,

2000 WL 1409760 at *2 ("The allegations contained in the affidavits and pleadings may not be merely conclusory, but rather, must assert particular facts which establish the necessary ties between the defendant and the forum state.").

Moreover, even if the New York and Louisiana cases cited by Plaintiff were not contrary to Ninth Circuit law, they are distinguishable. In *State of La., ex rel. Guste*, the District Court determined that "literal compliance" with the foundation requirements served no purpose when the documents were produced via discovery from the objecting party. In that case, the question posed to the objecting party made its act of producing the documents sufficient to establish authentication and/or an exception to hearsay. 656 F.Supp. at 1314. Such circumstances do not exist in this case.

**b) Exhibit 2 and Lines 16–20 on Page 2**

Next, Defendants contend that Exhibit 2 to the affidavit and Lines 16–20 on Page 2 must be struck as hearsay, lacking foundation, and containing allegations based on hearsay.

Mausolf states at Lines 16–20 on Page 2: "Travelers made several rental payments on that office space on behalf of Telstar. Based on Telstar's own records, it had office space in Arizona at least as early as November 2000. *See* fax cover sheet bearing Telstar name and listing Arizona business address dated November 1,2000 attached hereto as Exhibit '2'." (Response M. Dis. at 2) (Doc. # 27). Additionally, Plaintiff offers copy of the actual lease for this office space in its Supplemental Exhibits. (Supp. Exhibits at A(4)) (Doc. # 33).

---

**2.** The Court's independent research did not uncover any Ninth Circuit opinions endorsing the viewpoint of the New York and Louisiana District Courts in the two cases cited.

Plaintiff alleges it obtained both the fax cover sheet and the lease via discovery from Defendants (Response M. Strike at p. 9) (Doc. # 36) and again relies on *State of La., ex rel. Guste,* 656 F.Supp. at 1314. The Ninth Circuit, however, requires proper foundation for all evidence, regardless of source. *See, supra,* at pp. 924–25. Moreover, even of the foundation can be laid by opposing counsel's production of documents during discovery, Plaintiff has failed to provide evidence establishing that the question asked that triggered production of the documents establishes that Telstar leased office space in November 2000, for how long, and what business occurred at the leased premises. *See, e.g., Hal Roach Studios Inc. v. Richard Feiner and Co., Inc.,* 896 F.2d 1542 (9th Cir.1989).

#### c) Lines 23–27 on Page 2

Defendants object to Lines 23–27 on Page 2 as "hearsay, violates attachment rule, plus no foundation that Mr. Corlis, as opposed to someone else, used an American Express card apparently in the name of Mr. Corlis, pure speculation, no personal knowledge." (Reply M. Dis. at p. 2) (Doc. # 32).

Lines 23–27 state: "I discovered that Mr. Corlis frequently used his American Express Card in Arizona to purchase gas and building materials, which suggests that he was physically present in Arizona on several occasions and was transacting business for Telstar during those visits." In its Supplemental Exhibits, Plaintiff submits copies of the credit card statements. (Supp. Exhibits at A(3)) (Doc. # 33).

The Court finds that because Plaintiff has not offered admissible evidence demonstrating how the affiant learned or knew that Mr. Corlis frequently used an American Express credit card in Arizona, this portion of Mausolf s affidavit will be struck. *See* Fed.R.Civ.P. 602,901.

#### d) Line 2 on Page 3

Finally, Defendants argue that no foundation exists for Mausolf's assertion that an undisclosed place of alleged meeting was "Telstar's Arizona office." Because, however, Mausolf offered admissible evidence that he personally attended the meeting at the office space in Arizona, *see* Line 1 on Page 3, Plaintiff has proper foundation for this statement.

### 2) Plaintiff's Exhibit C in Response to M. Dis.

Next, Defendants argue that Exhibit C and any assertions based on it must be struck because of a lack of foundation, improper authentication, and hearsay.

Exhibit C contains a xeroxed copy of an Arizona Corporation Commission, Corporations Division Certificate of Disclosure allegedly completed by Mr. Corlis for Telstar. It also contains an Application for Authority to Transact Business in Arizona completed by Mr. Corlis for Telstar. This Application contains a file stamp from the Arizona Corporation Commission indicating that it was received on May 6, 1997. The file stamp also contains the signature of the Arizona Corporation Commission employee who received the Application.

Fed. R. of Evid. 901(b)(7) allows for authentication by evidence that a writing authorized by law to be recorded or filed was in fact recorded or filed in a public office. However, Plaintiff only offers a xeroxed copy of the documents. Therefore, absent certification that the xerox exemplifies the original document on file, complete foundation fails. Plaintiff again cites to *State of La., ex. rel. Guste,* 656 F.Supp. at 1314, for the proposition that requiring proper foundation serves no purpose because the documents were received from Defendants. However, Plaintiff again failed to provide evidence that the question that triggered production by De-

fendants of the documents establishes that Defendant Corlis properly executed on behalf of Telstar the documents that were tiled in accordance with the law at the Arizona Corporation Commission.

Even if proper foundation exists, the evidence constitutes inadmissible hearsay. Plaintiff offers it to prove the truth of the matter asserted, that Defendants applied to due business in Arizona. While Fed. R. of Evid. 802(6) allows for an exception to hearsay for records prepared and kept in the course of regularly conducted business activity and Fed.R.Evid. 803(8) allows for an exception for public records, Plaintiff offers no evidence that these documents are subject to these exceptions.

### 3) Affidavit of Thomas Sjoholm

Defendants object to three portions of Sjoholm's Affidavit.

#### a) Paragraph 2

Defendants object to Paragraph 2 based on "hearsay, no foundation, particularly as to time of employment as Senior Project Manager, for assertion as to length of time Telstar purportedly maintained an office in Arizona." (Reply M. Dis. at pp. 2–3) (Doc. # 32).

Paragraph 2 states: "Telstar did business in Arizona for approximately four years and maintained an office within the State of Arizona at 943 South 48th Street in Tempe, Arizona for approximately *two* years until early 2002."

Plaintiff points out that Sjoholm worked as a Senior Project Manager with Telstar and swore that "I make this affidavit of my own personal knowledge and am competent to testify as a witness herein." (Response M. Dis., Exhibit D fl) (Doc. # 27). Therefore, Plaintiff argues that this assertion overcomes Defendants' hearsay objection based on lack of personal knowledge. *See, e.g., Copiers Typewriters Calculators. Inc. v. Toshiba Corp.,* 576 F.Supp. 312, 316

(D.Md.1983)("[H]e states at the end of the affidavit that he has personal knowledge of all the facts contained in the affidavit.... These statements are sufficient to demonstrate knowledge ....").

This argument is unpersuasive and the evidence must be excluded. In *Carmen,* 237 F.3d at 1028, the Ninth Circuit held that "[a] plaintiffs belief..., without evidence supporting the belief, is no more than speculation or unfounded accusation ...." Sjoholm's conclusory statement regarding Telstar's business practices in Arizona, without accompanying facts establishing that as Senior Project Manager he was in a position to attest to the conclusion made, fails to provide proper foundation. *See* Fed.R.Evid. 602,901. Therefore, this portion of the Sjoholm affidavit will be excluded.

#### b) Paragraph 3

Defendants object to Paragraph 3 as "hearsay, speculation, no foundation, no personal knowledge—particularly as to Mr. Corlis' alleged 'job duties', how or what alleged business Mr. Corlis 'would travel to Arizona' to conduct, Mr. Corlis' alleged 'routine' and what alleged 'work-related activities' Mr. Corlis 'would spend three or four days in Arizona on (sic.).'" (Reply M. Dis. at p. 3) (Doc. # 32).

Paragraph 3 states: "As part of his job duties, Teryl Corlis would travel to Arizona to conduct business on behalf of Telstar. Mr. Corlis' routine was to travel to Arizona approximately every other week and would spend three or four days in Arizona on work-related activities."

Plaintiff again points out that Sjoholm worked as a Senior Project Manager with Telstar and swore that "I make this affidavit of my own personal knowledge and am competent to testify as a witness herein." (Response M. Dis., Exhibit D ¶ 1) (Doc. # 27). Plaintiff argues that this assertion

overcomes Defendants' hearsay objection based on lack of personal knowledge. *See, e.g., Copiers Typewriters Calculators, Inc.,* 576 F.Supp. at 316 ("[H]e states at the end of the affidavit that he has personal knowledge of all the facts contained in the affidavit.... These statements are sufficient to demonstrate knowledge ...."). However, the Court for the identical reasons set forth above, will exclude this evidence. *See supra* pp. 13–14; *Carmen,* 237 F.3d at 1028.

### c) Paragraph 4

Lastly, Defendants object to Paragraph 4 as "hearsay, no foundation, pure speculation/opinion/no personal knowledge, particularly as to alleged basis or reason for alleged travel and hearsay as to Mrs. Corlis alleged stay in Arizona 'until weather in Albuquerque improved'." (Reply M. Dis. at p. 3) (Doc. # 32).

Paragraph 4 states: "During the time that I worked for Telstar, it was my understanding that Mr. Corlis and his wife, Pauline Corlis, traveled to Arizona to spend time in their residence in Arizona. I was aware that they traveled to Arizona on weekends, and on at least one occasion during the winter months, Mr. Corlis indicated to me that his wife had decided to stay in Arizona until the weather in Albuquerque improved."

Sjoholm's statement is speculation as to the reasons behind the Corlis' travel to Arizona. *See* Fed.R.Civ.P. 602 (requiring personal knowledge for admissibility). Moreover, Sjoholm repeats what he was told by Mr. Corlis—that Mr. Corlis learned that his wife decided to stay in Arizona. This is admissible only if it is relevant that Mr. Corlis made the statement, and not for the truth of the statement. *See* Fed.R.Civ.P. 801, 302.

### 4) Affidavit of Rodney J. Tompkins

Defendants only object to Paragraph 2 in the Tompkins Affidavit. Again, they object on "hearsay, speculation, lacks foundation, no personal knowledge ...." (Reply M. Dis. at p. 3) (Doc. # 32).

Paragraph 2 states: "Travelers began working with Telstar while Telstar was still attempting to perform on its bonding contract obligations. During that timeframe (sic), I was aware that Teryl Corlis was visiting Arizona in relation to Telstar projects in Arizona. In fact, Travelers requested that Mr. Corlis refrain from visiting job sites in Arizona because of the ill will such visits caused with project owners and because Mr. Corlis' presence at the job sites was disruptive to completion of the work."

Plaintiff argues that Tompkins, as a consultant retained by Travelers to help with the handling of Telstar's bonds, made the affidavit based "on my own personal knowledge." Thus, the Court should accept his statement as an established fact. However, such conclusory statements are inadmissable absent accompanying facts establishing personal knowledge. *See, e.g., Carmen,* 237 F.3d at 1028.

### 5) Exhibits G–K of Plaintiff's Response *to* M. Dis.

Defendants seek to exclude Exhibits G–K for lack of foundation, no authentication, and hearsay.

Exhibit G consists of a copy of Telstar's Summary of Significant Accounting Policies from its March 31,2001 and 2000 Notes to Financial Statements. This document may constitute a regularly recorded business record pursuant to Fed. R. of Evid. 803(6). However, to be admissible, proper foundation must be laid by either the custodian, another qualified wimess, or a certification that complies with Fed. R.

of Evid. 902(11). The evidence will be excluded. *See supra* pp. 9–10.

Exhibit H contains a copy of the Article of Incorporation of Skycorp Electrical, Inc. filed with the Arizona Corporation Commission. It contains a file stamp signed by an employee of the Arizona Corporation Commission. Unfortunately, Plaintiff again fails to provide any authentication for the xeroxed record. *See* Fed.R.Civ.P. 901(b)(7). Moreover, the record fails to be self-authenticating under Fed. R. of Evid. 902(4) because it is not certified.

Exhibit I contains filed stamped xerox copies of the State of Arizona Corporation Commission Corporate Annual Report and Certificate of Disclosures for Telstar. Exhibit I contains the Corlises' Note to Financial Statements July 1,2000. Exhibit K contains a copy of a construction contract between Telstar and Peoria Unified School District # 11. Unfortunately, Plaintiff also fails to properly lay foundation for the records. *See* Fed.R.Civ.P. 901

## D. Motion to Dismiss

Having addressed Defendants' M. Strike, the Court now moves to the Motion to Dismiss. Defendants contend that there is a lack of personal jurisdiction under Fed.R.Civ.P. 12(b)(2), improper venue under Fed.R.Civ.P. 12(b)(3) and insufficient process and service of process under Fed.R.Civ.P. 12(b)(4) and 12(b)(5). As the Court finds a lack of personal jurisdiction, only this argument will be discussed.

### 1. Personal Jurisdiction

### a. Legal Standard

█ The plaintiff bears the burden of establishing personal jurisdiction. *See, e.g., Ziegler v. Indian River County,* 64 F.3d 470, 473 (9th Cir.1995) (citing *Farmers Ins. Exch. v. Portage La Prairie Mut.*

*Ins. Co.,* 907 F.2d 911, 912 (9th Cir.1990)); *Data Disc,* 557 F.2d at 1285 (citing *KVOS, Inc. v. Assoc. Press,* 299 U.S. 269, 278, 57 S.Ct. 197, 81 L.Ed. 183 (1936)); *Cummings v. W. Trial Lawyers Assoc.,* 133 F.Supp.2d. 1144, 1151 (D.Ariz.2001). A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. Fed.R.Civ.P. 12(b)(2); *see, e.g., Data Disc,* 557 F.2d at 1284 (citing Rule 12(b)(2)). When a defendant does so, "the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction'" over the defendant. *Cummings,* 133 F.Supp.2d at 1151.

█ Because no statutory method for resolving the personal jurisdiction issue exists, the district court determines the method of its resolution. *See Data Disc,* 557 F.2d at 1285 (citing *Gibbs v. Buck,* 307 U.S. 66, 71–72, 59 S.Ct. 725, 83 L.Ed. 1111 (1939)). A district court may allow discovery to help it determine whether it has personal jurisdiction over a defendant. *See id.* at 1285 n. 1 (citing *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d 406, 430 n. 24 (9th Cir.1977)). In addition, a district court may hear evidence at a preliminary hearing *to* determine its jurisdiction. *See id.* at 1285 n. 2. At such a preliminary hearing, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. *See id.* at 1285. If the district court does not hear testimony or make findings of fact and permits the parties to submit only written materials, then the plaintiff must make only a prima facie showing of jurisdictional facts to defeat the defendant's motion to dismiss. *See Omeluk v. Langsten Slip & Batbyggeri A/S,* 52 F.3d 267, 268 (9th Cir.1995)(citing *Data Disc,* 557 F.2d at 1285 and *Farmers,* 907 F.2d at 912); *Ballard v. Savage,* 65 F.3d 1495, 1498 (9th Cir.1995); *Ziegler,* 64 F.3d at 473.[3]

---

**3.** The written materials may consist of the pleadings, declarations, affidavits, deposition testimony, exhibits, or other evidence. *See Omeluk,* 52 F.3d at 268.

█ Under this prima facie burden of proof, the plaintiff need only establish facts that if true would support personal jurisdiction over the defendant. *See Ballard,* 65 F.3d at 1498 (citing *Data Disc,* 557 F.2d at 1285); *Omeluk,* 52 F.3d at 268.[4] If the plaintiff survives the motion to dismiss under a prima facie burden of proof, however, the plaintiff still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. *Data Disc,* 557 F.2d at 1285 n. 2 (citing *Wells Fargo,* 556 F.2d at 430 n. 24).

Because no applicable federal statute governing personal jurisdiction exists, Arizona's long-arm statute applies to this case. *See Terracom v. Valley Nat'l Bank,* 49 F.3d 555, 559 (9th Cir.1995)(citing *Core-Vent Corp. v. Nobel Indus.,* 11 F.3d 1482, 1484 (9th Cir.1993)); *Amba Mktg. Sys. Inc. v. Jobar Int'l. Inc.,* 551 F.2d 784, 787 (9th Cir.1977) (citing *Cook v. Fox,* 537 F.2d 370 (9th Cir.1976)). Arizona's long-arm statute provides for personal jurisdiction to the extent permitted by the Due Process Clause of the United States Constitution. Ariz. R. Civ. P. 4.2(a); *see Doe v. Am. Nat'l Red Cross,* 112 F.3d 1048, 1050 (9th Cir.1997); *see also Uberti v. Leonardo,* 181 Ariz. 565, 892 P.2d 1354, 1358, *cert. denied,* 516 U.S. 906, 116 S.Ct. 273, 133 L.Ed.2d 194 (1995) (stating that under Rule 4.2(a), "Arizona will exert personal jurisdiction over a nonresident litigant to the maximum extent allowed by the federal constitution").[5]

█ Absent traditional bases for personal jurisdiction (i.e., physical presence, domicile, and consent) the Due Process Clause requires that nonresident defendants have certain **minimum contacts** with the forum state such that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945); *Doe,* 112 F.3d at 1050; *Data Disc,* 557 F.2d at 1287. The Due Process Clause protects a defendant's "liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties or relations.'" *Omeluk,* 52 F.3d at 269–70 (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 471–72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). "By requiring that individuals have 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign,' the Due Process Clause 'gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.'" *Id.* at 270 (quoting *Burger King,* 471 U.S. at 472, 105 S.Ct. 2174 (internal citations omitted)).

"In determining whether a defendant had minimum contacts with the forum state such that the exercise of jurisdiction over the defendant would not offend the Due Process Clause, courts focus on 'the relationship among the defendant, the forum, and the litigation.'" *Brink v. First Credit Resources,* 57 F.Supp.2d 848, 860

4. *See also Hancock v. Hitt,* No. C–98–960–MMC–(ARB), 1998 WL 345392, at *2 (N.D. Cal. June 19, 1998) ("plaintiff must produce admissible evidence to support the court's exercise of personal jurisdiction"); *Fujitsu–ICL Sys. Inc. v. Efmark Serv. Co.,* No. 00–CV–0777–W–(LSP), 2000 WL 1409760, at *3 (S.D.Cal. June 29, 2000) ("a prima facie showing means that plaintiff has produced admissible evidence, which, if believed, would be sufficient to establish the existence of personal jurisdiction").

5. Rule 4.2(a) provides, in pertinent part: "A court of this state may exercise personal jurisdiction over parties, whether found within or outside the state, to the maximum extent permitted by the Constitution of this state and the Constitution of the United States."

(D.Ariz.1999) (citing *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977)). If a court determines that a defendant's contacts with the forum state are sufficient to satisfy the Due Process Clause, then the court must exercise either "general" or "specific" jurisdiction over the defendant. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414–15 nn. 8–9, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Doe*, 112 F.3d at 1050; *Ziegler*, 64 F.3d at 473 (citing *Reebok Int'l Ltd. v. McLaughlin*, 49 .F.3d 1387, 1391 (9th Cir. 1995)). The nature of the defendant's contacts with the forum state will determine whether the court exercises general or specific jurisdiction over the defendant. *Id.*

### 1) General jurisdiction

A court may assert general jurisdiction over a defendant "[i]f the defendant's activities in the state are 'substantial' or 'continuous and systematic,' . . . even if the cause of action is unrelated to those activities." *Doe*, 112 F.3d at 1050–51 (quoting *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1396 (9th Cir.1986)); *see Ziegler*, 64 F.3d at 473; *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir.1986); *Data Disc*, 557 F.2d at 1287 (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446–47, 72 S.Ct. 413, 96 L.Ed. 485 (1952)).

### 2) Specific jurisdiction

■ If a defendant has not had substantial or continuous and systematic contacts with the forum state, then the court must determine whether the defendant has had sufficient contacts with the forum state such that the exercise of specific jurisdiction over the defendant would not offend the Due Process Clause. *See Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154; *Core–Vent*, 11 F.3d at 1485. The Ninth Circuit applies a three-part test to determine whether the defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction. Under this three-part test, specific jurisdiction exists only if: (1) the defendant *purposefully availed* himself of the privileges of conducting activities in the forum, thereby invoking the benefits and protections of its laws, or purposely directs conduct at the forum that has *effects* in the forum; (2) the claim *arises out* of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice, i.e., it is *reasonable*. *See, e.g., Bancroft & Masters. Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000) (citing *Cybersell, Inc. v. Cybersell, Inc.* 130 F.3d 414, 417 (9th Cir.1997)); *Amba Mktg.*, 551 F.2d at 789 (citing *L.D. Reeder Contractors v. Higgins Indus., Inc.*, 265 F.2d 768, 773–74 n. 12 (9th Cir. 1959)); *Chandler v. Roy*, 985 F.Supp. 1205, 1211 (D.Ariz.1997); *see also Burger King*, 471 U.S. at 472–76, 105 S.Ct. 2174.

### a) "purposeful availment" and "effects" tests

■ In discussing the specific jurisdiction test, the United States Supreme Court emphasized long ago that "it is essential in each case that there be some act by which the defendant *purposefully avails* itself of the privilege of conducting activities *within* the *forum State*, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958) (emphasis added). More recently, the Supreme Court held that a court may also have specific jurisdiction over a defendant where the intended effects of the defendant's *non-forum* conduct were purposely directed at and caused harm in the forum state. *Calder v. Jones*, 465 U.S. 783, 788–90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (adopting "effects test" for libel, invasion of privacy, and intentional infliction of emotional distress claims where defen-

dant's Florida conduct had "effects" in California, the forum state).[6]

Consistent with this precedent, the Ninth Circuit has held that a district court should apply different specific jurisdiction tests to contract and tort cases. *See Ziegler*, 64 F.3d at 473; *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir.1991) (stating that in determining whether court has specific jurisdiction over defendant, "[i]t is important to distinguish contract from tort actions"); *see also Cummings*, 133 F.Supp.2d. at 1153. In cases involving certain types of torts, the Ninth Circuit has held that courts should apply the "effects test" and that "jurisdiction may attach if an out-of-forum defendant merely engages in conduct aimed at, and having an effect in, the situs state." *Ziegler*, 64 F.3d at 473 (applying effects test because section 1983 claim "is more akin to a tort claim than a contract claim"); *see Dole Food Co., Inc. v. Watts*, 303 F.3d 1104 (9th Cir. Sept. 10, 2002) (applying effects test to fraud, deceit, and conversion claims); *Caruth v. Int'l Psychoanalytical Ass'n*, 59 F.3d 126, 128 n. 1 (9th Cir.1995) (applying effects test to defamation, tortious interference with business relations, and intentional infliction of emotional distress claims); *Core–Vent*, 11 F.3d at 1486 (libel); *Brainerd v. Governors of the Univ. of Alberta*, 873 F.2d 1257, 1259 (9th Cir.1989) (defamation and tortious interference with

contract); *see also Cummings*, 133 F.Supp.2d. at 1153 (applying effects test as to individual defendants' conduct because plaintiff had "alleged only tort causes of action against" defendants).[7]

In cases arising out of contractual relationships, including those involving related tort claims, the Ninth Circuit applies the "purposeful availment" test enunciated in *Hanson*, which "requires that the defendant engage in some form of affirmative conduct allowing or promoting the transaction of business within the forum state. This focus on the defendant's affirmative conduct is designed to ensure that the defendant is not haled into court as the result of random, fortuitous, or attenuated contacts." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (quoting *Shute v. Carnival Cruise Lines*, 897 F.2d 377, 381 (9th Cir.1990), *rev'd on other mounds*, 499 U.S. 585, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991)) (applying purposeful availment test in case involving sale of used filter where plaintiff brought action for recission, breach of warranty, and misrepresentation); *see Roth*, 942 F.2d 617, 621 (9th Cir.1991) (applying purposeful availment test in breach of contract action); *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 817 (9th Cir.1988) (finding effects test inapplicable and stating that, "unlike *Calder* and *Haisten*, in this case personal jurisdiction is sought on a contract claim, not on a tort claim.").[8] A

---

6. *Cf. Sinatra v. Nat'l Enquirer*, 854 F.2d 1191, 1195 (9th Cir.1988)("[The] decisions of this court have interpreted the holdings of *Calder* and *Burger King* as modifying the purposeful availment rubric to allow 'the exercise of jurisdiction over a defendant whose only 'contact' with the forum is the 'purposeful direction' of a *foreign* act having effect in the forum state.' ") (quoting *Haisten,* 784 F.2d at 1397) (emphasis in original)).

7. *See also Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir.1998); applying effects test because trademark infringement and unfair competition case was akin to tort

case; *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087 (9th Cir.2000) (declaratory judgment action involving trademark infringement); *AT & T Co. v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 590 (9th Cir. 1996) (CERCLA claim).

8. *See also Medcap Credit Co. v. Boyes*, No. CIV–99–1151–AS, 2000 WL .249352, at *3 (D.Or. Feb.22,2000) (applying purposeful availment test in action for misrepresentation and conversion based on defendants' representations· before plaintiffs entered into sale agreement and stating: "Although [plaintiffs'] case sounds in tort, the claims arise out of

defendant has engaged in affirmative conduct and thereby "purposely availed himself of the benefits of a forum if he has deliberately 'engaged in significant activities within a State or has created 'continuing obligations' between himself and the residents of the forum.'" *Gray*, 913 F.2d at 760 (quoting *Burger King*, 471 U.S. at 475–76, 105 S.Ct. 2174); *see Cybersell*, 130 F.3d at 417 (stating that "the 'purposeful availment' requirement is satisfied if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents") (citing *Ballard*, 65 F.3d at 1498).

Finally, in analyzing the purposeful availment requirement, the Ninth Circuit performs a *qualitative* evaluation of the defendant's contact with the forum state to determine whether the "'defendant's conduct and connection with the forum [s]tate are such that he should reasonably anticipate being haled into court there.'" *Core-Vent*, 11 F.3d at 1484 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)); *Thos. P. Gonzalez Corp. v. Consejo Nacional de Produccion de Costa Rica*, 614 F.2d 1247, 1252 (9th Cir.1980) (stating that "it is not the quantity, but rather the 'nature and quality' of the defendant's activities which determine whether extension of jurisdiction offends due process").

### b) "arising out of" requirement

The Ninth Circuit has adopted a "but for" test for determining whether a plaintiff! cause of action *arises out of* a defendant's forum related activities. *Doe*, 112 F.3d at 1051; *see Omeluk*, 52 F.3d at 271.

The "arising out of" requirement is met if *but for* the contacts between the defendant and the forum state, the cause of action would not have arisen. *See Terracom*, 49 F.3d at 561. In *Shute v. Carnival Cruise Lines*, the Ninth Circuit reasoned that:

The 'but for' test is consistent with the basic function of the 'arising out' of requirement—it preserves the essential distinction between general and specific jurisdiction. Under this test, a defendant cannot be haled into court for activities unrelated to the cause of action in the absence of a showing of substantial and continuous contacts sufficient to establish general jurisdiction.... The 'but for' test preserves the requirement that there be some nexus between the cause of action and the defendant's activities in the forum.

897 F.2d at 385.

### c) "reasonableness" requirement

An unreasonable exercise of jurisdiction violates the Due Process Clause even if the "purposeful availment" and "arising out of" requirements of the specific jurisdiction test are satisfied. *See Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (1945) (holding that exercise of personal jurisdiction must "not offend traditional notions of fair play and substantial justice"); *Ziegler*, 64 F.3d at 474–75. A district court presumes, however, that its exercise of jurisdiction over a defendant is reasonable if the first two requirements of the specific jurisdiction test are met. *See Ballard*, 65 F.3d at 1500 (citing *Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir.1990)). If the first two requirements are satisfied, then

---

their contractual relationship with [defendants].''); *Hancock*, 1998 WL 345392, at *2 [applying purposeful] availment test in breach of contract and fraud action and stating: "(Although one of plaintiff's claims sounds in tort, all of plaintiffs claims arises [sic] out of an alleged contractual relationship."). *Cf.*

*Core-Vent*, 11 F.3d at 1486 (applying effects test in libel action but stating that, "in *McGlinchy*, ... we refused to apply the *Calder* effects test when the **underlying action involved a contract dispute**, not a tort") (emphasis added).

the burden of proof shifts and the defendant must " 'present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.' " *Id.* (quoting *Burger King,* 471 U.S. at 477, 105 S.Ct. 2174).

 The Ninth Circuit considers the following seven factors to determine whether the exercise of specific jurisdiction over a defendant is reasonable: (1) the extent of the defendant's purposeful interjection into the forum state; (2) the burden on the defendant of litigating in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the dispute; (6) the importance of the forum to the plaintiffs interest in convenient and effective relief; and (7) the existence of an alternative forum. *See Ziegler,* 64 F.3d at 475 (citing *Terracom,* 49 F.3d at 561); *Core–Vent,* 11 F.3d at 1487–88 (citing *Paccar Int'l. Inc. v. Commercial Bank of Kuwait,* 757 F.2d 1058, 1065 (9th Cir.1985)) *see also World–Wide Volkswagen,* 444 U.S. at 292, 100 S.Ct. 559 (listing several of the seven factors).

### 1. Analysis

1) Specific Jurisdiction Does Not Exist

As explained above, a three part test applies *for* determining specific jurisdiction: (1) the defendant purposefully availed himself of the privileges of conducting activities in the forum, or purposefully directed conduct at the forum that has effects on the forum; (2) the claim arises out of the defendant's forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice.

(a) Purposeful Availment Test Applies

This case arises out of a contract where the Defendants agreed to indemnify Plaintiff against all claims and losses arising out of any bonds issued by the Plaintiff to the Defendants. Plaintiff maintains that it has paid claims and incurred expenses because of the agreement with Defendants, for which Defendants are required to reimburse Plaintiff. These causes of action arise out of a contractual relationship. Accordingly, the Court applies the purposeful availment test to determine whether it has specific jurisdiction. *See, e.g., McGlinchy,* 845 F.2d at 817.

 The purposeful availment test requires that the Defendants allegedly engaged in affirmative conduct allowing or promoting the transaction of business within the forum state by either (1) deliberately taking part in significant activities within the state, or (2) creating continuing obligations between themselves and the residents of the forum. *Gray,* 913 F.2d at 760. In analyzing the purposeful availment requirement, the Court performs a qualitative evaluation of the Defendants' contacts with Arizona to determine whether its "conduct and connection with [Arizona] are such that [it] should reasonably anticipate being haled into court [here]." *Core–Vent,* 11 F.3d at 1484 (quoting *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559).

(1) Telstar Never Purposefully Availed

 After excluding all inadmissible evidence, Plaintiff cannot establish purposeful availment by Telstar. The evidence shows that Plaintiff seeks to enforce a claim of performance under an indemnification obligation arising from an agreement executed and to be performed in New Mexico. None of the admissible evidence establishes that Telstar deliberately took part in significant activities within Arizona or created continuing obligations between itself and Arizona residents concerning the indemnification obligation.

First, Plaintiff offers evidence of a meeting occurring in November 2001 between

Telstar employees and Mausolf in an Arizona office that Mausolf perceived to be owned by Telstar. (Pl. Resp. M. Dis., Exhibit A p. 3) (Doc. # 27). However, no evidence establishes that this meeting either related to the present action or that Telstar routinely used this office space to conduct business in Arizona in connection with the agreement at issue.

Next, Plaintiff offers other non-specific conduct in an effort to establish specific jurisdiction. Plaintiff's proof, however, of a valid General Commercial Contractor license issued to Telstar fails to establish that Telstar previously used or currently uses the license to conduct business in Arizona related to the indemnification agreement at issue in this case. Telstar admits only to occasional work in Arizona, all of which it completed prior to January 2002.

Such minimal contacts with Arizona fail to establish that Telstar would anticipate being haled into an Arizona court to address issues related to the New Mexico executed indemnification agreement.

(2) Corlis Never Purposefully Availed

Plaintiff contends that Defendant Terryl Corlis is the President and sole shareholder of Telstar. Defendant Pauline Corlis is also an officer and director of Telstar. Defendants argue that there is no jurisdiction over Mr. and Mrs. Corlis because they were acting in their official capacity as representatives of Telstar.

The Ninth Circuit in *Forsythe v. Overmyer*, 576 F.2d 779, 783–84 (9th Cir.), *cert. denied*, 439 U.S. 864, 99 S.Ct. 188, 58 L.Ed.2d 174 (1978), stated "a corporate officer who has contact with a forum only with regard to the performance of his official duties is not subject to personal jurisdiction in that forum." However, the Ninth Circuit has found that "Arizona's long-arm statute may, consistent with constitutional due process, allow assertion of personal jurisdiction over officers of a corporation as long as the court finds those officers to have sufficient minimum contacts with Arizona." *Davis v. Metro Productions, Inc.*, 885 F.2d 515, 522 (9th Cir.1989)(citing *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22–3 (2d Cir.1988)). "Accordingly, the jurisdictional question in this action is whether the Court's exercise of jurisdiction accords with 'traditional notions of fair play and substantial justice' embodied in the Due Process clause of the Fourteenth Amendment and not whether the fiduciary shield doctrine bars jurisdiction." *Brink*, 57 F.Supp.2d at 860 (citing *Macpherson v. Taglione*, 158 Ariz. 309, 762 P.2d 596, 599 (App.1988)).

With respect to Mr. Corlis, Plaintiff argues that he "not only earned income in Arizona but injected himself into commercial activity here on many occasions by soliciting business for Telstar and by traveling here to manage that business." Pl.'s Resp. Mot. Dismiss at 11. Plaintiff alleges that Mrs. Corlis acted as an officer for Telstar, "intentionally [undertaking] action to cause income to be earned in Arizona," *Id.* at 10.

The Court finds this argument unpersuasive. The fact that the Corlises admit earning income prior to January 2002 from occasional work completed in Arizona fails to establish purposeful availment. Moreover, sporadic unrelated vacation visits to Arizona fail to establish sufficient minimal contacts. Neither of these past experiences in Arizona alerted the Corlises to the possibility of being haled into Arizona courts over the New Mexico executed indemnification agreement, as none of the alleged activities appear sufficiently to relate to the indemnification agreement.

(b) "Arising Out Of" Requirement

Turning to the second prong of the specific jurisdiction test, Plaintiff provides no

admissible evidence that this cause of action would not have arisen but for the Defendants' contacts with Arizona. Moreover, all of Plaintiffs offered evidence of alleged contacts, including those proffered that are inadmissible, relate to general jurisdiction, not jurisdiction specifically related to this action. Plaintiff offers nothing to persuade the Court to exercise jurisdiction over the alleged breach of contract action arising out of a New Mexico executed contract which operates under New Mexico law.

### (c) "Reasonableness" Requirement

Plaintiffs failure to satisfy the purposeful availment test and the arising out requirement eliminates the presumption that exercise of jurisdiction over the Defendants is reasonable. *See Ballard,* 65 F.3d at 1500 (citing *Sher v. Johnson,* 911 F.2d 1357, 1364 (9th Cir.1990)). Therefore, the burden of proof remains on Plaintiff. Plaintiff offers no explanation for why it would be reasonable for an Arizona court to exercise jurisdiction over Defendants in the absence of any evidence establishing that any aspect of the dispute relates to or occurred in Arizona. Plaintiff therefore fails to satisfy its burden of proof that jurisdiction would be reasonable in Arizona.

### 3) General Jurisdiction Does Not Exist

Courts assert general jurisdiction if the defendant's activities in the state are "substantial" or "continuous and systematic." *Haisten,* 784 F.2d at 1396. Defendants' activities in Arizona cannot be classified as "substantial" and/or "continuous and systematic."

### (a) Defendant Telstar

■ Plaintiff concedes that Defendant Telstar is a New Mexico Corporation, but alleges that Telstar maintained a commercial general contractor's license in Arizona, and was authorized to do business in Arizona. However, Plaintiff offers no evidence that Defendant performed any substantial or continuous and systematic work in Arizona. Telstar provides evidence that it maintained its books and principal place of business in New Mexico and only performed occasional business in Arizona prior to January 2002. (Def. SOF ¶¶ 13, 14). Therefore, the Court finds that insufficient evidence exists to establish general jurisdiction over Telstar.[9]

### (b) Defendants Terryl and Pauline Corlis

Plaintiff maintains that Defendants Terryl and Pauline Corlis were earning income in Arizona to the extent that their corporation, Telstar, was earning income in Arizona. Mr. and Mrs. Corlis own a home in Maricopa County, Arizona, which is only used as a vacation residence. Considering the minimal nature of the Corlises visits to Arizona and the lack of evidence regarding the amount or duration of income earned by them in Arizona, these allegations are insufficient to submit the Corlises to general jurisdiction in the state of Arizona. *See, e.g., Doe,* 112 F.3d at 1050–51. Moreover, as the Corlises were served at their *New Mexico* residence, service fails to establish personal jurisdiction in Arizona.

Accordingly,

**IT IS ORDERED** that Defendants' Motion to Dismiss Pursuant to Rule 12(b) on

---

9. The Court notes that, to the extent Plaintiff suggests that personal jurisdiction may be established by contacts occuring *after* the date its cause of action accrued, it incorrectly interprets the law. Personal jurisdiction is determined at the time the cause of action is brought. *See generally Int'l Shoe Co.,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95.

Behalf of Defendants Telstar Construction Company, Inc., Terryl D. Corlis and Pauline Corlis (Doc. # 10) is **GRANTED** without prejudice.

**IT IS FURTHER ORDERED** that Plaintiffs Request for Leave to File Supplemental Exhibits in Support of Response to Motion to Dismiss (Doc. # 33) is **GRANTED.**

**IT IS FURTHER ORDERED** that Defendants' Motion to Strike Affidavits and Documents Submitted by Plaintiff (Doc. # 39) is **DENIED** in part and **GRANTED** in part.